IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

```
CORPORAL DANIEL KLINE,        )
et al.,                       )
                              )
            Plaintiffs,       )     Civil Action No. 06-642
                              )
     v.                       )     Judge Flowers Conti
                              )     Magistrate Judge Caiazza
ALAN VALENTIC, et al.,        )
                              )
            Defendants.       )
```

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Defendants' Motion to Dismiss (Doc. 24) be granted in part and denied in part, as described below.

### II.   REPORT

#### BACKGROUND

Pennsylvania State Police Corporal Daniel Kline ("Officer Kline") has brought this civil rights action against Alan Valentic ("Mr. Valentic") and a number of State Police officials (at times, "the State Defendants"). *See generally* Compl. (Doc. 1).[1]

The lawsuit addresses two underlying factual scenarios. The first stems from a "road rage" incident between Mr. Valentic and Officer Kline, then off-duty. *See generally id.* at ¶¶ 20-38.

---

[1] Although the wives of Officer Kline and Mr. Valentic have been named as parties, their roles have remained peripheral.  The court will make reference to the spouses only as appropriate and necessary.

After the confrontation, Officer Kline filed summary criminal charges against Mr. Valentic, who in turn lodged a written complaint against the Plaintiff with the State Police.  *See id.* at ¶¶ 41-42.

The summary charges against Mr. Valentic proceeded to a hearing, and the Defendant was found guilty.  *Id.* at ¶¶ 43-45.

In response to Mr. Valentic's complaint, one of the State Defendants conducted an investigation and reported that Officer Kline acted inappropriately in connection with the Valentic incident and the resulting criminal proceedings.  *See generally id.* at ¶¶ 46-47, 52-54.  The Plaintiff "utilized . . . internal procedures to protest" his treatment under the investigation, and he claims the State Defendants retaliated against him by, among other things, causing a denial of his contemporaneous application for a promotion.  *See id.* at ¶¶ 48-51, 54-55; *see also id.* at ¶¶ 58-60, 69 (alleging other retaliatory acts).  Based on the foregoing, Officer Kline alleges violations of his First Amendment rights (Count I), a denial and "conspiracy to deny him" procedural due process (Count II), and state tort claims for intentional infliction of emotional distress ("IIED") and defamation (Count III).[2]

---

[2]  Counts I and III are also asserted against Mr. Valentic, though that Defendant has not moved for dismissal.  To the contrary, Mr. Valentic appears prepared to engage the battle, having filed counterclaims for abuse of process and malicious prosecution.  *See* Answer and Countercls. (Doc. 18) at 13-16.

The second factual scenario appears unrelated to the first. *See generally id.* at Count IV.  The Plaintiff alleges that, in response to his charging an African-American individual with a crime, "barracks gossip" revealed the belief he had engaged in racial profiling.  *See id.* at ¶¶ 82-85.  Officer Kline alleges that, as a consequence, State Defendants Ferraro and McFadden effectuated a lowering of his performance evaluation and otherwise "sought to destroy [his] career and promotional opportunities."  *Id.* at 87 & Wherefore clause.  On these facts, the Plaintiff pleads claims under Sections 1981 and 1983 for "racism" and violation of the First, Thirteenth, and Fourteenth Amendments.  *Id.* at Count IV.

## ANALYSIS

### A.   Count I -- The First Amendment Claims

A public employee's statements are protected activity only when they involve "matter[s] of public concern."  Hill v. Borough of Kutztown, 455 F.3d 225, 241-42 (3d Cir. 2006) (citation omitted).  Matters of "personal interest" or "status in the workplace" do not qualify.  *See* McGreevy v. Stroup, 413 F.3d 359, 365 (3d Cir. 2005) (citation omitted) *and* U.S. v. National Treasury Employees Union, 513 U.S. 454, 466 (1995).

Here, Officer Kline "was complaining about [purported] inaccurate and false report[s]" made in connection with the

-3-

Valentic investigation.  *See generally* Pls.' Br. (Doc. 29) at 12.
Although counsel argues that the "[]accuracy of reports done by
the . . . State Police is clearly a matter of public concern,"
such metaphysical reasoning would turn any private matter into
protected activity under the First Amendment.  Officer Kline's
complaints regarding the investigation were, on their face,
personal, and he cannot state a claim under the First Amendment.

   **B.**   <u>**Count II -- Procedural Due Process and Civil Conspiracy**</u>

   As the Defendants correctly assert, the Plaintiff has failed
to identify a life, liberty, or property interest.  The denial of
a promotion or training opportunity does not qualify.  *See, e.g.*,
<u>Zezulewicz v. Port Auth. of Allegh. County</u>, 290 F. Supp.2d 583,
596 (W.D. Pa. 2003) (public employee has no property interest in
"continued employment in the same position or to a promotion")
(citations omitted).

   Officer Kline's counsel do not take issue with this
conclusion.  *See generally* Pls.' Br. at 13-14.  Rather, they make
efforts to show that the Plaintiff may proceed under a theory of
"civil conspiracy."  *See id.* at 13.

   This argument misses the point.  "[C]ivil conspiracy
requires a separate underlying tort as a predicate for
liability."  <u>In re Orthopedic Bone Screw Prods. Liab. Litig.</u>,
193 F.3d 781, 789 (3d Cir. 1999).  The claim "must be based on an
existing independent wrong or tort that would constitute a valid

-4-

cause of action." *Id.* (quotations and numerous citations
omitted); *accord* <u>Willis v. City of Los Angeles</u>, 57 Fed. Appx.
283, 288 (9th Cir. Dec. 20, 2002) (applying same rule under
Section 1983).  As seen above and below, none of the allegations
concerning the Valentic incident can support a viable claim
against the State Defendants, so the Plaintiff's conspiracy
theory is unavailing.

    **C.**    **<u>Count III -- the State Law Claims</u>**

    The Plaintiff's state law claims are barred by the doctrine
of sovereign immunity.  Neither defamation nor IIED fall within
Pennsylvania's nine statutory exceptions, and the doctrine
"protects a Commonwealth employee acting within the scope of his
. . . employment from liability, <u>even for intentional acts [that]</u>
<u>cause emotional distress</u>."  <u>Holt v. Northwest Pa. Training P'ship</u>
<u>Consortium, Inc.</u>, 694 A.2d 1134, 1140 (Pa. Commw. 1997)
(citations omitted, emphasis added).

    Although counsel suggests the State Defendants acted outside
the scope of their employment, an examination of the aggrieved
conduct reveals the contrary.  *Compare, e.g.*, <u>Cooper v. Beard</u>,
2006 WL 3208783, *16 (E.D. Pa. Nov. 2, 2006) ("an employee acts
within the scope of his employment when [he] engages in conduct
of the kind the employee is [expected] to perform, when the
conduct occurs substantially within the authorized time and space
limits, and when [it] is actuated, at least in part, by a purpose

to serve the employer") (citations and some internal quotations omitted, most alterations in original) *with* Compl. (State Defendants' conduct was undertaken in connection with Board of Professional Responsibility investigation, and Plaintiff's superiors issued communications regarding results of investigation and his possible promotion, consistent with their supervisory responsibilities).  The Defendants acted within the scope of their employment, and the Plaintiff cannot survive Rule 12(b)(6) through "unwarranted [in]ferences," "deductions," or "footless conclusions of law."  *See* Bright v. Westmoreland County, 380 F.3d 729, 735 (3d Cir. 2004) (citations and internal quotations omitted).

The Defendants are entitled to qualified immunity.[3]

D.   **Count IV -- The Reverse-Race Discrimination Allegations**

This Count recites a smattering of legal precepts, leaving the court and Defendants at a disadvantage in formulating a comprehensive, reasoned response.  *See* discussion *supra* (noting allegations of "racism" under Sections 1981, 1983, and First, Thirteenth, and Fourteenth Amendments).

---

[3]  In light of Officer Kline's inability to proceed under state law, the same claims asserted by his Wife also fail.  In addition, the Defendants are correct that Ms. Kline has no standing to assert claims based on purported violations of her husband's civil rights.  *See* Hogan v. City of Easton, 2004 WL 1836992, *6 (E.D. Pa. Aug. 17, 2004) ("[i]t is well-established . . . that a spouse has no standing to assert § 1983 claims that are premised on violations of the other spouse's civil rights") (collecting cases).  Accordingly, Ms. Kline should be dismissed as a Plaintiff in this case.

The Plaintiff's "shotgun" approach is not consistent with the spirit of the Federal Rules.  *See* <u>Perez v. Radioshack Corp.</u>, 2002 WL 1335158, *2 (S.D. Fla. Apr. 23, 2002) ("'shotgun pleading,' in addition to making it difficult to frame a responsive pleading, . . . imperils fundamental principles of due process"; "[a] lawsuit is not a game of hunt the peanut") (citations and some internal quotations omitted); *cf. also* <u>General Motors Corp. v. New A.C. Chevrolet, Inc.</u>, 263 F.3d 296, 333 (3d Cir. 2001) ("bare bones claim[s] that [the defendant's conduct] was 'wrongful in the air'" do not suffice).  In any event, the Defendants have stated arguments for dismissal and the court should address them.

Initially, counsel correctly observes that the First Amendment allegations in Count IV fail because the Plaintiff has not identified protected activity.  *See* Defs.' Br. (Doc. 25) at 7, 14.  Officer Kline's arrest of an African-American suspect does not qualify, and Count IV's references to the First Amendment are without basis.

The Defendants next deduce that the Plaintiff is attempting to state a retaliation claim under Section 1981.  *See id.* at 14 (indicating same and arguing that lowering of performance evaluation was not "[a] materially adverse" employment decision). The Plaintiff has not identified conduct that may be construed as protected activity, however, so the allegations seem more likely

-7-

to assert reverse-race discrimination than retaliation.  *See generally* Compl. at ¶ 88 (alleging that Defendants' actions were "racist").[4]

Last, the Defendants correctly observe that they cannot be sued in their official capacities under Section 1983.  *See generally* Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005) ("state officials sued in their official capacities for money damages are [not] 'persons' within the meaning of § 1983") (citation omitted).  Unfortunately, the Complaint neither states nor implies whether the Defendants are being sued in their official or individual capacities.  *See generally* Count IV.

Aside from the Defendants' arguments, there are legal principles referenced in Count IV that appear well "off the radar."  The Thirteenth Amendment, for example, abolished slavery.  U.S. Const. amend. XIII.  How it can be read to support a claim for reverse-race discrimination defies comprehension.

The court also is perplexed by the Plaintiff's reference to the Fourteenth Amendment.  The undersigned doubts Officer Kline

---

[4]  Even assuming the Plaintiff alleges retaliation, the Defendants are not entitled to dismissal at the 12(b)(6) stage for want of an adverse employment action.  *See generally, e.g.,* Martin v. Northwestern Mut. Life Ins. Co., 2006 WL 2560128, *2 (E.D. Wis. Sept. 5, 2006) (arguments on Rule 12(b)(6) regarding materiality of adverse employment action are inconsistent with liberal pleading standards). Defense counsel's standing arguments regarding Officer Kline fail for the same reason.  *Compare* Defs.' Br. at 10-11 (arguing Plaintiff suffered no current "injury in fact") *with* discussions in text *supra* (noting allegations that Defendants caused denial of promotion and lowering of performance evaluation).

is suggesting he had a property interest in receiving a favorable performance evaluation.  *See generally* discussions *supra*. Otherwise, counsel must do more to explain how this constitutional provision is implicated by Officer Kline's claims.

In light of the foregoing, it is hard to say what is left of the Plaintiff's claims and/or legal theories in Count IV. The Defendants and the court have made good faith attempts to decipher the claims, and any further efforts should be reserved for the Plaintiff and his attorneys.

Accordingly, it is recommended that the Plaintiff be ordered to amend Count IV, making last and best efforts to state viable claim(s) of reverse-race discrimination.  No further opportunities for amendment should be afforded, and counsel should remain mindful that it is their duty, not the court's, to identify any appropriate legal theory or theories on which to proceed.  *See generally* Potter v. ICI Amer. Inc., 103 F. Supp.2d 1062, 1072 (S.D. Ind. 1999) ("when presented with a motion to dismiss, the non-moving party must proffer some legal basis to support his cause of action"; "[t]he federal courts will not invent legal arguments for litigants") (citations and internal quotations omitted).  Once the amended pleading has been filed, the Defendants should be permitted to renew their motion to dismiss.

Before undertaking the amendment, however, opposing counsel, the Klines, the Valentics, and a representative of the State Defendants should be ordered to appear before the undersigned to discuss an amicable resolution of this case.

As noted above, Mr. Valentic is charged with violations of the First Amendment and state law.  *See* Counts I, III.  In light of the Plaintiff's inability to assert First Amendment claims against the State Defendants, it is hard to imagine how he can proceed against Mr. Valentic.

Turning to the state law claims, there is little reason to believe that an exercise of supplemental jurisdiction would be appropriate here.  *See* <u>Bright v. Westmoreland County</u>, 380 F.3d 729, 751 (3d Cir. 2004) ("absent extraordinary circumstances, where the federal causes of action are dismissed the district court should ordinarily refrain from exercising [supplemental] jurisdiction") (citations and internal quotations omitted).  This observation extends to the Valentics' counterclaims, which also sound in state law.  *See* <u>Werner v. Plater-Zyberk</u>, 799 A.2d 776, 784-87 (Pa. Super.) (abuse of process and malicious prosecution are state law claims), *appeal denied*, 806 A.2d 862 (Pa. 2002).

The court is left, then, with the unrelated allegations of reverse-race discrimination.  Even assuming the Plaintiff is able to plead viable claim(s), the adverse employment action in question is, by any conventional legal measure, modest.

*See* discussion *supra* (only concrete adverse action identified is single instance of purported lowering of performance evaluation).

In light of the impending likely dismissal of most or all of the remaining claims, it would appear in everyone's best interests to consider whether pressing forward is worth the time, energy, and legal expense that undoubtedly will result.

## CONCLUSION

For all of the reasons stated above, the Defendants' Motion to Dismiss should be granted in part and denied in part, as specified in this Report.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for Magistrates, objections to this report and recommendation are due by December 7, 2006.  Responses to objections are due by December 18, 2006.


November 21, 2006                    *Francis X. Caiazza*
                                     Francis X. Caiazza
                                     U.S. Magistrate Judge

cc (via email):

Don Bailey, Esq.
Sheri D. Coover, Esq.
Arnold Y. Steinberg, Esq.
Robert A. Willig, Esq.